Filed 11/29/21  P. v. Valle CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDUARDO VALLE,<br><br>    Defendant and Appellant. | D079077<br><br><br><br>(Super. Ct. No. F9882642) |

APPEAL from an order of the Superior Court of Santa Clara County, Jesus Valencia, Judge.  Affirmed.

Jonathan Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Alisha M. Carlile, Deputy Attorneys General, for Plaintiff and Respondent.

Eduardo Valle appeals from the trial court's order denying his petition under Penal Code section 1170.95[1] to vacate his second degree murder conviction and to resentence him. Valle contends he made a prima facie case that he is eligible for relief because he was convicted of implied malice murder as an aider and abettor under the natural and probable consequences doctrine. We conclude that Valle was not convicted under the natural and probable consequences doctrine, and he is therefore ineligible for relief. We accordingly affirm the order denying the petition.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Valle's Conviction for Second Degree Murder*

As reflected in the Sixth District's 2002 opinion in Valle's direct appeal, Valle's criminal conviction arose from a stabbing incident that took place in Gilroy in 1998, leading to the death of one victim and injuries to two others.

"[O]n September 18, [1998,] [the three victims,] Molina, Walter, and Arthur, among others, walked by [Valle's co-defendant] Hernandez, hurled a gang insult at him, and slashed the tires on Valle's father's truck. They continued walking and ultimately congregated outside 8090 Springdale Court. Valle, Hernandez, and a third person followed them to Springdale Court. At least Valle and the third person were armed with knives. Within moments of arriving, [Valle and Hernandez] and their confederate attacked Molina, Walter, and Arthur, stabbing all three of them, and killing Walter."

Based on this incident, an amended information charged Valle and co-defendant Ricardo Hernandez with certain crimes. Valle was charged with first degree murder with the further allegation that he personally used a dangerous and deadly weapon (a knife) (§§ 187, subd. (a), 12022, subd. (b)(1)),

---

1       All further statutory references are to the Penal Code.

two counts of attempted murder (§§ 664, subd. (a), 187), and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)). For the attempted murder and assault counts it was further alleged that Valle personally used a dangerous and deadly weapon (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)).

In August 1999, a jury convicted Valle of the lesser offense of second degree murder and two counts of assault with a deadly weapon. The jury acquitted Valle of the two counts of attempted murder. For the second degree murder conviction, the jury made a not-true finding on the allegation that Valle personally used a dangerous and deadly weapon. For one of the assault counts, the jury made a true finding that Valle personally used a dangerous and deadly weapon and personally inflicted great bodily injury, and it made a not-true finding as to those allegations for the second assault count. The trial court sentenced Valle to a term of 22 years to life in prison.

B.     *The 2002 Opinion Resulting From Valle's Appeal of His Conviction*

The Sixth District affirmed Valle's conviction on July 10, 2002. (*People v. Valle* (July 10, 2002, H020638) [nonpub. opn.] (the 2002 Opinion).) The 2002 Opinion explained that the jury's verdict that Valle was guilty of second degree murder, along with its not-true finding on the personal weapon use, established that Valle's murder conviction was based on the theory that he was a direct aider and abettor of Walter's murder rather than the person who inflicted the fatal stab wound. As the 2002 Opinion explained, substantial evidence supported Valle's conviction under a direct aiding and abetting theory of liability: "[T]he jury could have reasonably found that Valle, Hernandez, and their confederate intended to retaliate against Molina, Arthur, and Walter by violently attacking them. The jury could further have found that all of them knew before the attack, or at least once it commenced,

3

that they had knives, intended to use them, and were using them to stab their victims. Under the circumstances, therefore, the jury could reasonably conclude that defendants and their confederate intended to attack Walter, they knew their confederate was stabbing him in a way that was dangerous to his life in conscious disregard for that danger, and they intended to encourage or facilitate their confederate's conduct. In other words, the jury could reasonably convict defendants of aiding and abetting second degree murder—a killing with implied malice."

The 2002 Opinion rejected Valle's argument that his acquittal on the attempted murder counts as to the other two victims indicated that "the jury necessarily found that [Valle] did not intend to kill anyone." As the court explained, the argument was flawed because attempted murder required express malice, whereas second degree murder could be based on either express *or* implied malice. "The charges of attempted murder required the jury to find a specific intent to kill. Thus, the acquittals reflect only that one or more jurors had a reasonable doubt about whether [Valle] harbored the *specific* intent to kill or express malice. The acquittals do not preclude a finding that [Valle] encouraged or facilitated [his] confederate's act of stabbing Walter with conscious disregard for his life."

As specifically relevant to the issues presented here, the 2002 Opinion also discussed an argument premised on the absence of a jury instruction on the natural and probable consequences doctrine as a basis for the murder conviction. The 2002 Opinion stated, "[Valle] next point[s] out that the trial court did not give CALJIC No. 3.02, which sets forth the natural-and-probable-consequences doctrine of aiding and abetting. The instruction explains that an aider and abettor is liable not only for the offense he or she intended to aid and abet but also for offenses that are natural and probable

4

consequences of the originally intended offense. [Valle] argue[s] that since this instruction was not given, the jury could not have relied on it. [Valle] further argue[s] that since the jury did not rely on this doctrine, this court cannot rely on it to uphold [his] conviction[], even if there is evidence to support it." (Fn. omitted.) The 2002 Opinion rejected this argument. "Here, the jury was not asked whether [Valle] knowingly and intentionally encouraged the target offense of assault with a knife and if so, whether Walter's murder was the natural and probable consequences of that specific offense. Indeed, the prosecutor did not even argue this theory of *consequential* vicarious liability. However, this theory was not the sine qua non for finding [Valle] guilty of murder. Rather, the court's instructions provided a more direct theory: aiding and abetting second degree murder, i.e., an unlawful killing with implied malice, and this was the theory argued by the prosecutor." As the 2002 Opinion pointed out, "Indeed, the implicit findings of the jury go beyond what would have been required under the natural-and-probable-consequences doctrine. Here, the jury did not just find that the killing was the natural and probable consequences of an assault that [Valle] encouraged or facilitated; the jury also found that [Valle] knowingly and intentionally encouraged or facilitated a fatal stabbing with conscious disregard for the life of the victim. Thus, the jury found [Valle] guilty under instructional requirements more stringent than those set forth in CALJIC No. 3.02."

C.    *Valle's Petition for Relief Under Section 1170.95*

On January 18, 2019, Valle, in propria persona, filed a petition under section 1170.95 in Santa Clara County Superior Court to vacate his murder conviction and to be resentenced. In a form petition, Valle declared that a complaint, information, or indictment was filed against him that allowed him

5

to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of second degree murder under one of those theories and could not now be convicted of murder because of changes to sections 188 and 189, effective January 1, 2019; and that he was requesting that counsel be appointed to represent him.

After the trial court appointed the Public Defender to represent Valle, the parties submitted briefing. The parties also submitted certain documents from the record of conviction. Among other things, Valle submitted the verdict forms from his criminal trial, and the People submitted the 2002 Opinion, along with an excerpt from the reporter's transcript from Valle's trial, which contained the entirety of the jury instructions.

On August 23, 2019, the trial court held a hearing, at which it determined that Valle failed to make a prima facie case for relief, as he was not convicted of felony murder or murder under the natural and probable consequences doctrine.

Valle appeals from the order denying his petition.

## II.

## DISCUSSION

A.    *The Enactment of Senate Bill No. 1437*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; (Senate Bill 1437)) "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony murder rule. (. . . §§ 188, subd. (a)(3), 189, subd. (e), as amended by Senate Bill 1437.)" (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

More specifically, the felony murder rule was narrowed by amendments to section 189, which now provides that to be liable under a felony murder

6

theory, a defendant must fall into one of the following categories of people: (1) the actual killer; (2) although not the actual killer, a person who intended to kill and assisted the actual killer in the commission of first degree murder; or (3) a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e)(1)-(3).)

The natural and probable consequences doctrine was eliminated as a basis for murder by amending section 188, which now provides, "Except as stated in subdivision (e) of Section 189 [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see also *People v. Gentile* (2020) 10 Cal.5th 830, 851 (*Gentile*) [holding that "section 188[, subd. ](a)(3) bars conviction for second degree murder under a natural and probable consequences theory"].)

Further, Senate Bill 1437 enacted section 1170.95, under which "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts" if he or she could not have been convicted of murder because of Senate Bill 1437's changes to sections 188 and 189. (§ 1170.95, subd. (a).)[2]

---

[2] The Legislature recently amended section 1170.95, effective January 1, 2022. (Sen. Bill No. 775 (2021-2022 Reg. Sess.); Stats. 2021, ch. 551, § 2.) The amended statute provides that a petition may be filed by "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted

When presented with a facially sufficient petition seeking relief under section 1170.95, the trial court must first determine whether the petitioner has made a prima facie case for relief. (§ 1170.95, subd. (c).) As our Supreme Court has recently clarified, before a trial court makes that determination, it must appoint counsel for the petitioner, if requested, and must allow the parties to submit briefing. (*Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)[3] As long as the trial court has appointed counsel, "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under subdivision (c)." (*Lewis*, at p. 972.) Prior appellate opinions "are generally considered to be part of the record of conviction," although "the probative value of an appellate opinion is case-specific." (*Id.* at p. 972.)

When reviewing any part of the record to assess whether a petitioner has made a prima facie case, "at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) However, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.) If the court determines that the petitioner has established a prima facie case, it is

---

murder under the natural and probable consequences doctrine, or manslaughter." (*Ibid.*)

[3] The amendments to section 1170.95, effective January 1, 2022, effectively codify our Supreme Court's holding in *Lewis*, *supra*, 11 Cal.5th 952, that the trial court must appoint counsel (if requested) and allow the parties to submit briefing before determining whether a petitioner has made a prima facie case for relief. (Stats. 2021, ch. 551, § 2.)

required to issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subds. (c), (d)(1).)

Here, it is undisputed that the trial court followed the appropriate procedures in determining whether Valle made a prima facie case for relief. Specifically, it appointed counsel for Valle, afforded the parties the opportunity to submit briefing, and it looked to the record of conviction—including the 2002 Opinion, the verdict forms, and the jury instructions—in conducting its analysis.[4]

B.    *Valle Is Ineligible for Relief Because He Was Not Convicted of Felony Murder or Murder Under a Natural and Probable Consequences Theory*

We turn now to Valle's contention that he is eligible for relief under section 1170.95.

An individual is eligible to seek relief under section 1170.95 only if he or she is "[a] person convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) Valle does not contend that he was convicted of felony murder.[5] He also concedes that he was not convicted of murder under the theory that he refers to as "the

---

[4]    Although Valle argued in his initial appellate briefing that the trial court erred in considering the record of conviction, that argument is foreclosed by our Supreme Court's recent opinion in *Lewis*, *supra*, 11 Cal.5th 952. After *Lewis* was issued, the parties submitted supplemental letter briefs, in which Valle acknowledged that our Supreme Court has now established that a court may consider the record of conviction in determining whether a petitioner has stated a prima facie case for relief under section 1170.95.

[5]    Although Valle's initial briefing in the trial court argued that he was convicted of felony murder, the People submitted jury instructions that refuted any such claim, and Valle no longer advances that contention on appeal.

9

natural and probable consequence theory of aiding and abetting."
Specifically, Valle acknowledges that the trial court did not instruct the jury that it could return a guilty verdict on the murder count if it found that Valle aided and abetted a *different* offense, such as assault, the natural and probable consequence of which was murder.

However, Valle contends that his case falls into a *third* category of murder convictions that give rise to eligibility for relief under section 1170.95. Valle calls this theory "the natural and probable consequence theory of implied malice murder." According to Valle, "[t]he trial court . . . instructed the jury on natural and probable consequences in defining implied malice," and therefore because "the natural and probable consequence theory" was "used to convict [Valle] of murder . . . he has satisfied . . . section 1170.95."

1.    *Legal Principles*

    a.    *Aiding and Abetting*

To evaluate Valle's contention, we must first review the basic rules governing the criminal culpability of an aider and abettor. "[A]n aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*).) This type of liability is often referred to as "*direct* aiding and abetting liability." (*Gentile*, *supra*, 10 Cal.5th at p. 844, italics added.) "Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.'" (*McCoy*, at p. 1117.) Thus, for example, under the natural and probable consequences doctrine prior to the enactment of Senate Bill 1437, "if a person aid[ed] and abet[ted] only an

intended assault, but a murder result[ed], that person may be guilty of that murder, even if unintended, if it [was] a natural and probable consequence of the intended assault." (*McCoy,* at p. 1117.) "Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent. Instead, '[a]ider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature' and ' "is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense" ' may not be intended at all." (*Gentile*, *supra*, 10 Cal.5th at p. 844.)

> b.     *Malice Aforethought*

The concept of malice aforethought in the context of murder is also relevant to our analysis. As our Supreme Court has explained, "the crime of murder, as defined in section 187, includes, as an element, malice. . . . It may be either express or implied. It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' (§ 188.) It is implied 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' (*Ibid.*) This definition of implied malice is quite vague. . . . We have interpreted implied malice as having 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.] The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." ' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181 (*Chun*).)

11

2. *In Precluding a Conviction for Murder Under the Natural and Probable Consequences Doctrine, Senate Bill 1437 Did Not Preclude a Conviction for Implied Malice Murder by a Direct Aider and Abettor*

Based on the jury instructions and verdict forms, Valle was almost certainly convicted of second degree murder as a direct aider and abettor based on *implied* malice, rather than *express* malice.[6] Valle therefore relies upon the jury instruction for implied malice to support his contention that he was convicted under the natural and probable consequences doctrine. Specifically, the jury was instructed regarding implied malice as follows: "Murder of the second degree also is the unlawful killing of a human being when, one, the killing resulted from an intentional act; two, *the natural consequences of the act are dangerous to human life*; and three, the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life." (Italics added.)[7]

---

[6] We infer that Valle was almost certainly convicted of *implied* malice murder, rather than *express* malice murder, based on the not-guilty verdicts on the two counts of attempted murder and the guilty verdicts for assaults on those same victims. Because attempted murder requires express malice (*People v. Smith* (2005) 37 Cal.4th 733, 739), by making a not-guilty finding on the attempted murder counts, the jury indicated that the People did not prove that Valle had the mental state of *express* malice during the crimes.

[7] Instead of directly quoting the relevant jury instruction from his trial, Valle quotes from the 2002 Opinion's inexact paraphrase of the jury instruction, which erroneously uses the phrase "natural and probable consequences" rather than "natural consequences." Specifically, as the 2002 Opinion described, "The [trial] court stated [during jury instructions] that implied malice does not involve a specific intent to kill. Rather, implied malice exists when the killing is the result of an intentional act, the natural and probable consequences of that act are dangerous to human life, and the act was deliberately performed with knowledge of but conscious disregard for such danger." Although the difference in wording is ultimately of no

12

Valle contends that because the instruction for implied malice murder states that *the natural consequences* of the act must be dangerous to human life, if someone is convicted of implied malice murder as a direct aider and abettor, the murder conviction is necessarily based on a natural and probable consequences doctrine. According to Valle, "there is no practical difference between the natural and probable consequence theory for implied malice of a 'direct' aider and abettor who lacks the intent to kill and the natural and probable consequence theory for aiding and abetting." As we will explain, we reject the argument.

A conviction for implied malice murder under a direct aiding and abetting theory differs significantly from a conviction for murder under the natural and probable consequences doctrine. Therefore, although the jury instruction directed the jury to consider whether "*the natural consequences of the act are dangerous to human life*" as part of the implied malice inquiry, Valle was not convicted of murder under the natural and probable consequences doctrine. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056, review granted Sept. 23, 2020, S263939 (*Soto*) ["Although the instructions related to implied malice and the natural and probable consequences doctrine of aiding and abetting include similar language regarding a 'natural consequence,' they are distinctly different concepts."].) Under the natural and probable consequences doctrine " 'liability " 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' " ' " (*Gentile, supra,* 10 Cal.5th at pp. 843-844.) Thus, when the natural and probable consequences doctrine is used to obtain

consequence to our analysis, we rely on the actual wording of the jury instruction rather than on the inaccurate paraphrase in the 2002 Opinion.

13

a murder conviction, "[s]o long as the direct perpetrator possessed malice, and the killing was a natural and probable consequence of the crime the defendant aided and abetted, *it* [*does*] *not matter whether the defendant intended to kill or acted with conscious disregard for human life*." (*Id.* at p. 845, italics added.) "[A]n aider and abettor need not personally possess malice, express or implied, to be convicted of second degree murder under a natural and probable consequences theory." (*Id.* at p. 847.)

In contrast, when a person directly aids and abets murder under an implied malice theory, the aider and abettor must be found to " ' "know[] that his conduct endangers the life of another and . . . act[] with a conscious disregard for life." ' " (*Chun, supra,* 45 Cal.4th at p. 1181.) This is because "outside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator" (*McCoy, supra,* 25 Cal.4th at p. 1118), and a direct perpetrator of second degree murder must act with malice aforethought (§ 188).

Indeed, the 2002 Opinion expressly highlighted the *additional* findings of conscious disregard for human life that are needed for a conviction under a direct aiding and abetting theory of murder, as contrasted with a conviction under the natural and probable consequences theory. As the 2002 Opinion explained, "the implicit findings of the jury go *beyond what would have been required under the natural-and-probable-consequences doctrine.* Here, the jury did not just find that the killing was the natural and probable consequences of an assault that [Valle] encouraged or facilitated; the jury also found that [Valle] knowingly and intentionally encouraged or facilitated a fatal stabbing *with conscious disregard for the life of the victim.*" (Italics added.)

14

In a discussion that rejects the position advanced by Valle in this appeal, our Supreme Court recently emphasized that "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder *because a direct aider and abettor to murder must possess malice aforethought*." (*Gentile*, *supra*, 10 Cal.5th at p. 848, italics added.) Thus, "notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Gentile*, at p. 850; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 596 [because a direct aider and abettor must have the mens rea for murder, "[o]ne who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law"].)

The continued viability of direct aiding and abetting as a basis for an implied malice murder conviction follows plainly from the amendments to section 188 that were enacted by Senate Bill 1437. Section 188 was amended to state that (except for certain situations involving felony murder) "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) In amending section 188 in this manner, "the Legislature intended to restrict culpability for murder outside the felony murder rule to persons who personally possess malice aforethought." (*Gentile*, *supra*, 10 Cal.5th at p. 847.) As we have explained, a jury cannot convict a defendant of murder as a direct aider and abettor *unless* it makes a finding that the defendant possessed the mental state of malice aforethought. (*McCoy*, *supra*, 25 Cal.4th at p. 1118.) Therefore, someone

15

convicted of implied malice murder as a direct aider and abettor falls within the scope of the persons who can be convicted of murder under section 188, subdivision (a)(3) as enacted by Senate Bill 1437.  (See *Soto*, *supra*, 51 Cal.App.5th at p. 1057, review granted [rejecting the contention that a defendant convicted of implied malice murder as a direct aider and abettor can no longer be convicted of murder, as "Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder without a showing of malice, but it did not exclude from liability persons convicted of murder for acting with implied malice."].)

3.  *Controlling Case Law Establishes That Implied Malice Murder Under an Aiding and Abetting Theory Is a Valid Theory of Criminal Liability*

Not only does Valle contend that the enactment of Senate Bill 1437 precluded a conviction for implied malice murder under an aiding and abetting theory, he also contends that even *before* Senate Bill 1437, a conviction under that theory was not permitted.  As we understand Valle's argument, if a conviction for implied malice murder under a direct aiding and abetting theory was precluded at the time of his conviction, then he must have been convicted of implied malice murder under the natural and probable consequences doctrine, making him eligible for relief under section 1170.95.  In making this argument, Valle asserts that "a person cannot be guilty of directly aiding and abetting an implied malice murder."  Further, Valle's opening appellate brief, filed in April 2020, states that "[c]ounsel is not aware of a case that holds that one could be convicted of direct aiding and abetting in a second degree murder without the intent to kill," namely, under an implied malice theory.

We need not engage in an analysis of the case law that existed at the time of Valle's April 2020 brief,[8] and we need not delve further into the basis for Valle's contention that a direct aider and abettor cannot be convicted of implied malice murder. In December 2020 our Supreme Court removed any doubt regarding the viability of a conviction for implied malice murder under a direct aiding and abetting theory when it issued *Gentile.* (*Gentile*, *supra*, 10 Cal.5th at p. 850.) As *Gentile* explained, "an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Ibid.*; see also *Powell, supra*, 63 Cal.App.5th at p. 714 [relying on *Gentile* to "reject [appellant's] contention that direct aiding and abetting implied malice murder is an invalid legal theory"].) Valle's supplemental briefing, filed after *Gentile* was issued, acknowledges this statement but argues that it is dictum and should not be followed. We disagree. Our Supreme Court's statement was an integral part of its legal interpretation of the impact of Senate Bill 1437 on the scope of accomplice liability for murder. (*Gentile*, at p. 849 [explaining that a defendant could still be convicted of implied malice murder under a direct aiding and abetting theory in the course of rejecting the so-called

---

[8]    As one court recently observed, "[t]he reason why there is a dearth of decisional law on aiding and abetting implied malice murder may be the heretofore availability of the natural and probable consequences doctrine for second degree murder, which was easier to prove. . . . [B]ecause [under the natural and probable consequences doctrine] it was unnecessary to prove the aider and abettor intended to aid the perpetrator's commission of a life endangering act and that he or she was aware of the risk to human life, it was much easier to prove that murder was the natural and probable consequences of an intended assault than to prove direct aider and abettor liability for an implied malice murder." (*People v. Powell* (2021) 63 Cal.App.5th 689, 711, fn. 26 (*Powell*).)

"hybrid" approach proposed by amicus curiae, under which Senate Bill 1437 would have been interpreted "only to modify the natural and probable consequences doctrine for murder rather than to eliminate it"].)

In sum, because we find no basis on which to conclude that Valle was convicted of murder under the natural and probable consequences doctrine rather than as a direct aider and abettor of second degree murder, Valle does not fall within the class of persons eligible to seek relief under section 1170.95.[9]  The trial court properly denied his petition.

---

[9]    As we have noted, under the version of section 1170.95 that goes into effect on January 1, 2022, a person may also seek relief if that person's murder conviction is based on any other "theory under which malice is imputed to a person based solely on that person's participation in a crime." (Stats. 2021, ch. 551, § 2.)  A person convicted of murder under a *direct* aiding and abetting theory is not convicted based on any "theory under which malice is imputed to a person based solely on that person's participation in a crime" (*ibid.*) because such a conviction requires a finding that the defendant *personally* possessed the mental state of malice aforethought. (*McCoy, supra,* 25 Cal.4th at p. 1118.)

DISPOSITION

The order denying Valle's petition under section 1170.95 is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

AARON, J.

19